PEOPLE v ADAMSKI

Docket No. 131546. Submitted May 6, 1992, at Lansing. Decided
February 1, 1993, at 9:30 A.M. Leave to appeal denied,
442 Mich —.

Larry J. Adamski was convicted, following a jury trial in the
Manistee Circuit Court, James M. Batzer, J., of one count of
first-degree criminal sexual conduct. He was sentenced to sev-
enteen to forty years' imprisonment. He appealed.

*The Court of Appeals held:*

1. The court erred in holding that evidence of the complain-
ant's prior inconsistent statements to a mental health therapist
was not admissible for impeachment purposes, and the error
was not harmless. The defendant was denied his Sixth Amend-
ment right of confrontation. The statutory psychologist-patient
privilege with regard to the use of the statements, MCL
330.1750; MSA 14.800(750), must yield to the defendant's right
of confrontation. The privileged statements should not, how-
ever, be admitted if the case is brought to trial again, unless
the defendant's right of confrontation would be unduly in-
fringed by exclusion.

2. The court erred in prohibiting the defendant from cross-
examining the complainant with regard to a civil action that
she had brought or was about to bring against him.

3. The court properly held that the defendant's offer of proof
regarding two alleged false accusations of rape made by the
complainant was insufficient.

Reversed.

1. EVIDENCE — PRIVILEGED COMMUNICATIONS — CROSS-EXAMINATION
— RIGHT OF CONFRONTATION.

Common-law or statutory privileges, even if purportedly absolute,
may give way when they conflict with the constitutional right
of confrontation.

REFERENCES

Am Jur 2d, Witnesses §§ 285, 455, 456.

Constitutionality, with respect to accused's rights to information or
confrontation, of statute according confidentiality to sex crime
victim's communications to sexual counselor. 43 ALR4th 395.

2. EVIDENCE — PRIVILEGED COMMUNICATIONS — RIGHT OF CONFRONTA-
    TION.

    The statutory psychologist-patient privilege with regard to disclo-
    sures of communications may not be used to exclude evidence
    of a complainant's alleged inconsistent statements in a trial for
    first-degree criminal sexual conduct where the defendant's
    right of confrontation would be unduly infringed by exclusion
    (US Const, Am VI; Const 1963, art 1, § 20; MCL 330.1750; MSA
    14.800[750]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Dennis M. Swain,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Fredric S. Abood* and *Grant J. Gruel,* for the defendant on appeal.

Before: WAHLS, P.J., and MARILYN KELLY and REILLY, JJ.

WAHLS, P.J. Defendant was convicted by a jury of one count of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), and was thereafter sentenced to a term of seventeen to forty years' imprisonment. Defendant's motion for a new trial was denied, and this appeal as of right followed. We reverse.

I

Defendant's conviction stems from an act of sexual intercourse that allegedly occurred in late June 1988 between him and his daughter, age fourteen at the time. Defendant and the complainant's mother had been divorced years earlier and physical custody of the complainant changed several times. Relations between defendant and his former wife were apparently bitter.

At trial, the complainant testified that, on the

day of the alleged misconduct, defendant was read-
ing the local newspaper in a hot tub while she was
in the swimming pool. The complainant joined
defendant in the hot tub, where defendant showed
her an article about an airplane crash.[1] Defendant
asked her to stand, removed her bathing suit, and
proceeded to fondle her. Defendant then engaged
in sexual intercourse with the complainant. The
complainant also testified with regard to a second
act of intercourse with defendant that allegedly
occurred later that night when she and defendant
watched television together in his bedroom. Over
defendant's objection, the complainant related a
five-year history of sexual misconduct of escalating
severity. The complainant testified that sexual
intercourse with defendant first began 1 or 1½
years before the June 1988 incident.

Defendant's theory was that the complainant
had leveled a false accusation at him in order to
get even with him for disciplining her and out of
the complainant's alleged jealousy of defendant's
girl friends. Defendant had enrolled the complain-
ant in a counseling program in January 1988
because of the complainant's poor school grades
and after discovering marijuana in the complain-
ant's possession. Defendant later made arrange-
ments to send the complainant to the 1988 sum-
mer session of a boarding school in New York,
which the complainant began to attend a few
weeks after the charged incident of sexual miscon-
duct. The complainant acknowledged on cross-ex-
amination that she resented having to ask defen-
dant's girl friends for permission to visit her
friends. She also believed that defendant and Bar-
bara Lokovich, defendant's girl friend in June

---

[1] The prosecutor stipulated the fact that no airplane crashes were
reported in the local newspaper one week before and one week after
the incident.

1988 and wife at the time of trial, had sent her to boarding school to get rid of her. The complainant also acknowledged that she became upset when defendant informed her in August 1988, upon her return from the boarding school, that she would attend the school in the fall and that she did not want to return. The complainant told her mother of defendant's alleged misconduct shortly after she returned from the summer session. Her mother informed the authorities.

II

Before trial, defendant had obtained records concerning the complainant's discussions in January 1988 with a mental health therapist. Defendant sought to impeach the complainant with several statements she had made to the therapist that were inconsistent with her trial testimony, the most damaging of which was as follows:

> [The complainant] states that she sometimes fears that her father may be inappropriately sexual with her though she states he has never acted in this way. She states her fear comes from her mother discussing this subject with her often.[2]

The prosecutor objected to defendant's use of any statement the complainant had made in connection with counseling, arguing that such statements were absolutely privileged under Michigan's statutory psychologist-patient privilege, MCL 330.1750; MSA 14.800(750).[3] The trial court condi-

---

[2] This quote is taken from the therapist's initial written evaluation of the complainant.

[3] Section 2 of the statute provides:

Privileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or

tionally agreed with the prosecutor and allowed the complainant's mother to invoke the privilege on the complainant's behalf. The trial court later upheld its ruling after further argument on the issue. During defendant's motion for a new trial, however, the trial court held that its earlier ruling was an error of "constitutional dimension," on the basis of *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Nonetheless, the trial court denied defendant's motion, believing that the error was harmless beyond a reasonable doubt.

> I think that this evidence, which as I say could have and should have been allowed in, was in a sense cumulative evidence. Defense counsel sought to and did impeach [the complainant] numerous ways, numerous times. Her credibility was an issue throughout.

We agree with the trial court that the complainant's prior inconsistent statements to her counselor were admissible for impeachment despite the bar of the statutory privilege. It appears well settled as a matter of constitutional law that common-law or statutory privileges, even if purportedly absolute, may give way when in conflict with the constitutional right of cross-examination. The failure of the trial court to allow defendant to cross-examine the complainant, at least with regard to her statement that defendant had not acted inappropriately with her,[4] denied defendant

---

in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section. [MCL 330.1750(2); MSA 14.800(750)(2).]

[4] The record received by this Court does not include all the statements made by the complainant to her counselor, but only brief excerpts, including the statement quoted in this opinion. We therefore do not know the full extent to which the complainant's discussions with her counselor may have been inconsistent with her trial testimony.

his Sixth Amendment right of confrontation by limiting cross-examination. US Const, Am VI; Const 1963, art 1, § 20.

A primary interest secured by the Confrontation Clause is the right of cross-examination. *Delaware v Van Arsdall,* 475 US 673, 678; 106 S Ct 1431; 89 L Ed 2d 674 (1986); *Douglas v Alabama,* 380 US 415, 418; 85 S Ct 1074; 13 L Ed 2d 934 (1965). The right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject. *People v Hackett,* 421 Mich 338, 347; 365 NW2d 120 (1984); *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970). The right of cross-examination does not include a right to cross-examine on irrelevant issues and may bow to accommodate other legitimate interests of the trial process or of society. *United States v Nixon,* 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974); *Mancusi v Stubbs,* 408 US 204; 92 S Ct 2308; 33 L Ed 2d 293 (1972); *People v Arenda,* 416 Mich 1, 8; 330 NW2d 814 (1982). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall, supra,* p 679. Defendants are, however, guaranteed a reasonable opportunity to test the truth of a witness' testimony. *Hackett, supra.*

Privileges such as the one before us in this matter are intended to encourage society's interest in open discussion between persons in need and those from whom they seek help. At the same time, however, privileges impede a defendant's ability to present a defense by limiting the evi-

dence available. Both this Court and our Supreme Court have not been hesitant to hold that confidential or privileged information must be disclosed where a defendant's right to effective cross-examination would otherwise be denied. See, e.g., *Hackett, supra* (evidence of the complainant's sexual conduct otherwise barred by the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), admissible to show the complainant's bias, ulterior motive, or prior false accusations); *People v Hooper,* 157 Mich App 669; 403 NW2d 605 (1987), and *People v Rohn,* 98 Mich App 593; 296 NW2d 315 (1980) (witness' prior inconsistent statements from presentence investigation admissible despite confidentiality statute, MCL 791.229; MSA 28.2299); *People v Redmon,* 112 Mich App 246; 315 NW2d 909 (1982) (impeachment of prosecution witness by conviction over ten years old permissible despite ten-year limit of MRE 609[b], now 609[c]).

In the present case, we recognize the important policy underlying the statutory psychologist-patient privilege, MCL 330.1750; MSA 14.800(750). Weighing against this policy is defendant's interests in his liberty and receiving a fair trial. On its face, the privilege poses an absolute bar to the use of the complainant's statements for impeachment. In *Advisory Opinion to the House of Representatives,* 469 A2d 1161 (RI, 1983), the Supreme Court of Rhode Island considered a proposed statute that would have made privileged all communications between a sexual assault victim and a counselor. The court found that the proposed statute would absolutely bar the introduction of a class of evidence and would violate the constitutional rights of a defendant to confront his accusers, to obtain compulsory process, and to offer testimony. *Id.* MCL 330.1750; MSA 14.800(750) presents the same situation, and we believe that the statute must

yield to defendant's constitutional right of confrontation. See also *State v Hembd,* 305 Minn 120; 232 NW2d 872 (1975).

III

Whether to allow the use of any particular statement protected by the privilege for impeachment is a separate question that is within the trial court's discretion. *Van Arsdall, supra,* p 679. Assuming, as the trial court found at the hearing regarding defendant's motion for a new trial, that defendant should have been able to impeach the complainant with the prior inconsistent statement quoted in this opinion, the question becomes whether the restriction on cross-examination was harmless error. *Van Arsdall, supra,* p 684. In this inquiry, we look to the following considerations: (1) the importance of the complainant's testimony to the prosecutor's case; (2) whether the excluded testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the complainant's testimony; (4) the extent of the cross-examination of the complainant; and (5) the overall strength of the prosecutor's case. *Id.* Contrary to the trial court's belief, we hold that the error was not harmless.

Apart from expert opinion testimony presented by both sides concerning the typical behavior of child sexual abuse victims, this case was a contest between the credibility of the complainant and the credibility of defendant. The complainant's testimony was of paramount importance to the prosecutor's case, and her testimony was not corroborated by any witnesses or physical evidence. The complainant was cross-examined extensively, but the impeachment that was allowed was relevant to the complainant's possible bias toward defendant

and motive to make a false accusation. The excluded prior inconsistent statement's probative value with regard to the complainant's credibility went beyond a tendency to show bias or ulterior motive—it called into question the veracity of the bulk of the complainant's inculpatory testimony. We therefore conclude that the error was not harmless and reverse defendant's conviction.

In the event that this case is again brought to trial, if defendant desires to introduce impeachment evidence that would otherwise be barred by MCL 330.1750; MSA 14.800(750), the trial court and the parties shall follow the procedure outlined in *Hackett, supra,* for an initial offer of proof of the relevancy of the proposed evidence, followed by an in camera hearing if an adequate offer of proof is made. The trial court should not admit privileged statements into evidence unless defendant's right of confrontation would be unduly infringed by exclusion. *Hackett, supra,* pp 350-351.

We recognize that our holding today will distress, if not outrage, a great many people, and in recognition thereof we do not make this decision lightly. Nonetheless, our understanding of the law compels us to do so. It is possible that the policy behind the privilege may somehow be reconciled with the constitutional right of confrontation in a manner that fully preserves both, but if this is so, the method has not been made known to us, and we invite the Legislature or a higher appellate court to consider the problem.

IV

We also agree with defendant that the trial court erred in prohibiting defendant from cross-examining the complainant with regard to a civil action she had brought or was about to bring,

through her mother, against defendant. See *People v Grisham*, 125 Mich App 280, 284; 335 NW2d 680 (1983); *People v Johnston*, 76 Mich App 332, 334-336; 256 NW2d 782 (1977).

V

Defendant had sought to introduce evidence of two alleged false accusations of rape made by the complainant. Defendant now claims that the trial court erred in holding that defendant's offer of proof regarding the alleged false accusations was insufficient. We disagree. Defendant's offer of proof consisted of a transcript of an interview with the complainant, held after charges were brought against defendant, during which the complainant stated that, while she was at the boarding school during the summer, "[t]here was two guys and the other guy forced the other guy to go to bed with me." The offer of proof also included a transcript of a probate court hearing, held after charges were brought against defendant, at which the complainant's mother testified that the complainant "was raped by her dad and two people from New York."

Defendant's offer of proof was insufficient to show a prior false accusation. *Hackett, supra,* pp 348-351; *People v Mikula,* 84 Mich App 108, 115-116; 269 NW2d 195 (1978). No showing of falsity was made. The slight difference between the complainant's account of the boarding school incident and that related by the complainant's mother do not show falsity, nor does the fact that the complainant refused to report the incident to school authorities or divulge the names of her attackers. The trial court's decision to exclude inquiry into this matter was not an abuse of discretion.

VI

Defendant's remaining issues may be dealt with

briefly. Defendant argues that the trial court improperly allowed the complainant to testify regarding the history of sexual abuse allegedly committed by defendant. Defendant's argument on appeal, however, is that the testimony should not have been allowed because defendant was not allowed to cross-examine the complainant concerning her prior inconsistent statements, discussed above. This argument, to the extent that it stands on its own, is not properly before us because defendant failed to identify relevant authority, *People v Fowler,* 193 Mich App 358, 361; 483 NW2d 626 (1992), and because an objection on this ground was not raised below,[5] *People v Michael,* 181 Mich App 236, 238; 448 NW2d 786 (1989). In any event, it does not appear that the trial court abused its discretion in admitting the testimony. *People v Dermartzex,* 390 Mich 410; 213 NW2d 97 (1973).

Defendant's remaining arguments are not preserved for appellate review. Defendant failed to object to the cautionary instruction given by the trial court to the jury regarding the prior similar acts evidence that was introduced. *People v Puroll,* 195 Mich App 170, 171; 489 NW2d 159 (1992). Nor did defendant object to the allegedly improper comments made by the trial court.[6] *People v Weatherford,* 193 Mich App 115, 121; 483 NW2d 924 (1992). No manifest injustice would occur if we declined review. Finally, we need not address defendant's sentencing argument in light of our disposition of the case.

Reversed.

---

[5] Defendant objected to the prior-acts testimony below, but did not argue that the evidence should be excluded because of the trial court's limitation on cross-examination.

[6] Of particular interest is defendant's claim that the trial court's reference to the film *Bull Durham* was prejudicial because "[t]he word 'Bull' is commonly used to comment upon the lack of credibility of nearly anything." This argument would be amusing, were it not patently frivolous.