# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAKE PAUL HEINEY,

      Defendant-Appellant.

UNPUBLISHED
December 28, 2017

No. 333363
Monroe Circuit Court
LC No. 15-242361-FH

---

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of two counts of criminal sexual conduct, fourth degree (CSC-IV), MCL 750.520e(1)(b) (sexual contact by force or coercion). We affirm.

Defendant was a physician and his convictions resulted from his touching the breasts of one of his patients, CG, during an orthopedic examination. The trial court granted defendant a directed verdict on two other counts of CSC-IV related to similar allegations regarding another patient, SE. Two other women also provided testimony of defendant touching them during examinations.

For his first argument, defendant asserts that the evidence was insufficient to convict him because there was no medical testimony that his examination was medically "unethical or unacceptable." This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial. *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016). This Court also reviews questions of law de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

The federal Due Process Clause[1] requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence in a bench trial

---

[1] US Const, Am XIV.

-1-

sufficient to support a conviction, this Court considers the evidence "in a light most favorable to the prosecution" to ascertain "whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn by the trial court, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *People v Legg*, 197 Mich App 131, 132; 494 NW2d 797 (1992).

Defendant was convicted of two counts of CSC-IV for his touching of CG. MCL 750.520e(1)(b) provides, in relevant part:

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
>
> \* \* \*
>
> (b) Force or coercion is used to accomplish the sexual contact. Force or coercion includes, but is not limited to, any of the following circumstances:
>
> \* \* \*
>
> (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

The trial court concluded that defendant touched CG's breasts for a sexual purpose and engaged in a medical examination of CG that was medically recognized as unethical or unacceptable. More specifically, the trial court found that (1) CG did not complain of breast pain or discharge and (2) according to defendant the patient would have to complain of pain radiating from the breast or discharge from the breast in order to perform a breast examination. The trial court also noted the similar testimony of other witnesses.

Defendant argues that the trial court's legal conclusion was erroneous and the verdict was not based on the evidence produced at trial because the prosecution offered no evidence that defendant "engaged in unethical or unacceptable medical practices," a required element under the statute. Defendant notes that no witness provided testimony regarding what constituted an unethical or unacceptable orthopedic physical examination for a patient with CG's symptoms.

The Supreme Court in *People v Baisden*, 482 Mich 1000 (2008), held that medical testimony is not required in all prosecutions involving CSC in the medical context because "it is common knowledge that" some actions, such as "penile penetration constitute[] an unethical and unacceptable method of 'medical treatment.' " There is no case law determining whether it is common knowledge that squeezing breasts during an orthopedic examination for neck, back, and leg pain is an unethical and unacceptable method of medical treatment. However, in *People v Hallak*, 310 Mich App 555, 565; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016), the Court upheld the trial court's determination, based in part on expert testimony,

that a physician touching the breast of a patient during an examination for a throat problem was "sufficient for the jury to conclude that the touching was not for a legitimate medical purpose."

Despite the lack of any expert testimony on the issue, there was some testimony from which the trial court could have inferred that squeezing CG's breasts was not an acceptable medical practice. First, CG testified that including her breasts in the examination seemed unusual and she was confused by the examination, which defendant did not explain. Second, three other women testified that defendant touched their bare breasts in various ways while purportedly examining them for pain. That all the women claimed to have pain, but not chest-related pain, and defendant accessed and manipulated their breasts in various inconsistent ways, is some evidence that squeezing CG's breasts was not a part of a standard examination for her pain. Third, and most significantly, there was medical testimony that examining a breast during an orthopedic examination without a complaint of pain or discharge in the area was not medically acceptable. According to Detective Bliss, defendant stated that he would only examine a breast when the presenting complaint was shoulder pain and there was a complaint such as pain radiating or discharge from the breast. Defendant denied that a breast exam was a normal part of his investigation. CG testified that she never complained of pain in her chest and, thus, by defendant's standards, a breast examination would not be a medically appropriate part of his examination.

Additionally, Bliss testified that defendant reported that he would examine both breasts for comparison, and that the examination would consist of palpitating the muscle above the breast tissue. Further, the chest palpitation of the muscles of both sides of the chest that defendant described as medically appropriate was not the examination that CG described. The trial court found, consistent with the testimony, that CG was "quite definitive" in stating that she did not complain of breast pain or discharge and that defendant did not palpitate her breasts, but grabbed and squeezed.

Additionally, CG had interactions with three physicians for possible back surgeries after seeing defendant, and they performed MRIs, a nerve study, and a bone study, rather than physical examinations. MS, KO, and SE all testified that they were familiar with breast examinations and noted that defendant's breast examinations were much different from other examinations because he did not have any of the women lay down with an arm behind the head, did not move in slow small circles (palpitate), did not explain what he was doing or always ask questions, and did not always examine both breasts or use the same examination on both breasts. Thus, there was evidence, when viewed in a light most favorable to the prosecutor, that defendant's touching of CG's breasts was a medical examination done in a manner that was medically recognized as unethical or unacceptable.

Next, defendant argues that the trial court violated his right to confront SE by sustaining plaintiff's objection to questions on cross-examination about her financial difficulties. We review de novo the legal question of whether the admission or exclusion of evidence would violate a defendant's constitutional right of confrontation. *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012).

In all criminal prosecutions, the accused shall enjoy the right "to be confronted with the witnesses against him . . . ." US Const, Am VI. The central protection offered by the

Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *People v Sammons*, 191 Mich App 351, 356; 478 NW2d 901 (1991). Such testing is at the heart of the right of cross-examination. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). Defendants are "guaranteed a reasonable opportunity to test the truth of a witness' testimony," *id.*, and "a broad range of evidence may be elicited on cross-examination for the purpose of discrediting a witness," *Wischmeyer v Schanz*, 449 Mich 469, 474; 536 NW2d 760 (1995). However, the Confrontation Clause does not include the right to cross-examine on any subject, and there is no "right to cross-examine on irrelevant issues." *Adamski*, 198 Mich App at 138.

Defendant argues that the evidence of SE's financial condition should have been admitted as tending to establish SE's financial motivation to testify against him because his conviction could assist in any civil lawsuit that she may have intended to file.[2] Issues regarding the credibility of a witness by exposing "possible biases, prejudices, or ulterior motives" are always relevant on cross-examination. *Davis v Alaska*, 415 US 308, 316-317; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Defendant analogizes this case to *People v Morton*, 213 Mich App 331, 334-336; 539 NW2d 771 (1995), where the Court held that it was error to limit the defendant's cross-examination of a witness regarding any civil lawsuit she was contemplating against the defendant. The Court stated that "whether a witness has filed or is contemplating filing a civil lawsuit, the prospects for which may be affected by the outcome of a criminal action, is always relevant to a witness' credibility." *Id*. at 334-335.

Consistent with *Morton*, defendant was permitted to ask SE about any civil lawsuit that she intended to file, but although SE testified that she had contacted a friend who was an attorney, she ultimately was not planning to file a civil lawsuit. Because SE testified that she was not filing a civil lawsuit, her financial difficulties were not relevant. Without a civil lawsuit, there would be no financial motivation to testify in a criminal trial against defendant. Because defendant had the opportunity to cross-examine SE regarding her contact with an attorney and her consideration of a civil lawsuit, he was not denied his right to confront SE regarding her motivation for testifying.

Moreover, even where a defendant is denied his constitutional rights under the Sixth Amendment, reversal is not required if the error is harmless beyond a reasonable doubt. *People v McPherson*, 263 Mich App 124, 131-132; 687 NW2d 370 (2004). An error is harmless beyond a reasonable doubt when it has had no effect on the verdict. *Morton*, 213 Mich App at 335-336. Here, the trial court granted defendant's motion for a directed verdict of acquittal regarding his actions with SE because it found a reasonable doubt that his actions were medically recognized as unethical or unacceptable based on her history of having a cyst removed from her breast. Thus, SE's testimony did not contribute to defendant's conviction.

---

[2] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood